RAMOS 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00577-CR







Cipriano Ramos, Appellant



v.



The State of Texas, Appellee







FROM THE COUNTY COURT OF LAW NO. 3 OF TRAVIS COUNTY


NO. 436639, HONORABLE DAVID CRAIN, JUDGE PRESIDING








 Appellant Cipriano Ramos was convicted in a bench trial of violating a protective
order and sentenced to 120 days' confinement plus costs of court. See Tex. Penal Code Ann.
§ 25.07 (West 1994 & Supp. 1996). Appellant appeals in two related points of error. We will
affirm the judgment of conviction.



BACKGROUND


 On January 5, 1995, Laura Ramos filed an application for a protective order
seeking protection from family violence inflicted at the hands of appellant, her adult son. 
According to Laura Ramos' testimony, appellant would become "high" by sniffing paint or other
inhalants and by drinking and then would threaten her and attempt to fight her. Appellant, who
was in custody in Travis County at the time for a glue and aerosol paint offense, was served with
the notice of application for protective order, a temporary ex parte order, and citation to appear
before the court for a show-cause hearing on the application. Because appellant failed to appear
at the hearing, a protective order was issued against him by default. (1)

 On March 21, 1995, appellant was arrested for violating this protective order. He
pled guilty and was sentenced to 90 days' confinement plus court costs. Appellant was released
from custody on May 7, 1995.

 On May 11, 1995, appellant's brother again found appellant in the front yard of
his mother's house and asked him to leave. Laura Ramos called the police when appellant actually
entered the house. Appellant was then arrested and charged a second time with violating the same
protective order. This time appellant pled not guilty and was convicted after a bench trial. 
Appellant now appeals this conviction.



DISCUSSION


 Appellant asserts that the evidence was legally insufficient to support the verdict
on the issue of whether a valid protective order existed or on the issue of mens rea, claiming it
is undisputed that he never received proper notice or service of the protective order.

 The critical inquiry on review of the legal sufficiency of the evidence to support
a criminal conviction is whether the record evidence could reasonably support a finding of guilt
beyond a reasonable doubt. This Court does not ask whether it believes that the evidence at trial
established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after
viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia,
443 U.S. 307, 318-19 (1979); Griffin v. State, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981).

 Appellant contends that the State never proved the existence of a valid order
because the protective order was statutorily defective. Appellant argues that, because he never
received a copy of the order as required by section 71.17 of the Texas Family Code, the State
failed to prove that he violated an order as required to support a conviction under section 25.07
of the Texas Penal Code. See Tex. Fam. Code Ann. § 71.17 (West 1996); Tex. Penal Code Ann.
§ 25.07 (West 1994 & Supp. 1996). Further, appellant argues that the evidence in the record is
insufficient to establish that he knew of the existence of a protective order against him. He claims
that he was never served with or given an opportunity to read the protective order, that he did not
appear at the show-cause hearing, and that he was never told what, if anything, he was prohibited
from doing. It is appellant's contention that, because it was impossible for him to knowingly or
intentionally violate an order that he knew nothing about, the State failed to establish all the
elements of the offense as alleged in the information.

 In response, the State argues that under the unique facts of this case proof of
service of the protective order on appellant is not necessary to uphold appellant's conviction. 
According to the State, evidence of intent was legally sufficient in this case because the State
established that appellant had knowledge of the existence of the court order or was at least aware
of it before he committed the offensive act. The State argues that appellant had effective notice
of the protective order because, while he was in custody on separate inhalant abuse charges, he
was served with notice of application for protective order, a temporary ex parte order, and citation
to appear for a show-cause hearing. The notice of application informed appellant that a protective
order could issue by default if he failed to appear at the show-cause hearing. Further, the State
noted that appellant pled guilty the first time he was arrested for violating the protective order on
March 21, 1995. The State claims that appellant's knowing and voluntary guilty plea constituted
an admission of every element of the charged offense and that he cannot now disclaim knowledge
of the same protective order that he admitted to intentionally violating. We agree.

 In Small v. State, 809 S.W.2d 253 (Tex. App.--San Antonio 1991, pet. ref'd), the
appellant appealed his conviction for violating a protective order, alleging that there was no
evidence that he actually knew of the court order and that he therefore could not violate an order
he knew nothing about. Id. at 254. The court held that it was an essential element of the offense
that the State prove the appellant knowingly and intentionally violated the court order in question
beyond a reasonable doubt. Id. The court found that "[u]nless a defendant is somehow aware of
what he is prohibited from doing by a specific court order, he cannot be guilty of knowingly and
intentionally violating that court order." Id. at 256 (emphasis added). Further, in reversing the
conviction, the court in Small noted that "[a]side from indicating that the appellant was served
with notice of the hearing on the protective order, there [was] no evidence in [that] record that the
appellant agreed to a protective order, attended any hearing or in any way participated, that he
was ever served with a copy of the protective order, or that he in any way received notice, formal
or informal, of the issuance or existence of the court order in question prior to" his violating it. 
Id. at 256-57 (emphasis added).

 In the case at bar, appellant did receive notice, at least informally, of the existence
of the court order before he violated it. Appellant was served with the notice of application for
protective order, a temporary ex parte order, and citation to appear before the court for a show-cause hearing on the application. Because appellant did not appear at the hearing, and because
appellant claims to have never received a copy of the protective order which was granted by
default, appellant incorrectly relies on Small to contend that he could not have knowingly and
intentionally violated a court order in which he knew nothing about. The notice of an application
for protective order contained the warning that "[i]f you do not attend the hearing, a default
judgment may be taken and a protective order may be issued against you," and appellant knew that
he did not attend the hearing. This case differs from Small because appellant in this case was
previously arrested and convicted for going to his mother's house in violation of this same
protective order. In fact, appellant pled guilty to this first charge of violating the protective order. 
Appellant was released from custody on May 7, 1995, only four days before he was again arrested
for violating the same order a second time. 

 Thus, not only was appellant served with notice of application for protective order,
a temporary ex parte order, and citation to appear for a show-cause hearing, but he also was
arrested and pled guilty to violating the same protective order less than two months before the
conviction now in dispute. This establishes that he did "receive notice, formal or informal, of the
issuance or existence of the court order in question prior to his" violating it. Id. at 257. Any
rational trier of fact could have found beyond a reasonable doubt that a valid protective order
existed and that appellant had knowledge of or was aware of the protective order before going to
his mother's house on May 11, 1995. Accordingly, we overrule appellant's points of error.



CONCLUSION


 We affirm the judgment of conviction.



 

 Jimmy Carroll, Chief Justice


Before Chief Justice Carroll, Justices Aboussie and Kidd


Affirmed


Filed: May 22, 1996


Publish
1.   Appellant asserts that his failure to appear as directed by the citation to appear was not
his fault because the Travis County Sheriff's Department did not transport him from custody to
the court for his hearing.



 the same protective order that he admitted to intentionally violating. We agree.

 In Small v. State, 809 S.W.2d 253 (Tex. App.--San Antonio 1991, pet. ref'd), the
appellant appealed his conviction for violating a protective order, alleging that there was no
evidence that he actually knew of the court order and that he therefore could not violate an order
he knew nothing about. Id. at 254. The court held that it was an essential element of the offense
that the State prove the appellant knowingly and intentionally violated the court order in question
beyond a reasonable doubt. Id. The court found that "[u]nless a defendant is somehow aware of
what he is prohibited from doing by a specific court order, he cannot be guilty of knowingly and
intentionally violating that court order." Id. at 256 (emphasis added). Further, in reversing the
conviction, the court in Small noted that "[a]side from indicating that the appellant was served
with notice of the hearing on the protective order, there [was] no evidence in [that] record that the
appellant agreed to a protective order, attended any hearing or in any way participated, that he
was ever served with a copy of the protective order, or that he in any way received notice, formal
or informal, of the issuance or existence of the court order in question prior to" his violating it. 
Id. at 256-57 (emphasis added).

 In the case at bar, appellant did receive notice, at least informally, of the existence
of the court order before he violated it. Appellant was served with the notice of application for
protective order, a temporary ex parte order, and citation to appear before the court for a show-cause hearing on the application. Because appellant did not appear at the hearing, and because
appellant claims to have never received a copy of the protective order which was granted by
default, appellant incorrectly relies on Small to contend that he could not have knowingly and
intentionally violated a court order in which he knew nothing about. The notice of an application
for protective order contained the warning that "[i]f you do not attend the hearing, a default
judgment may be taken and a protective order may be issued against you," and appellant knew that
he did not attend the hearing. This case differs from Small because appellant in this case was
previously arrested and convicted for going to his mother's house in violation of this same
protective order